IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LINDA AFEOMA AMAECHI,<br>  *Plaintiff*,<br>v.<br><br>GEICO,<br>  *Defendant*. | CIVIL ACTION NO.<br>5:20-cv-00442-TES |

ORDER OF DISMISSAL

*Pro se* Plaintiff Linda Amaechi brings a myriad of employment discrimination claims[1] and a retaliation claim against Defendant Geico. [Doc. 12]. After a troubling and difficult discovery period, Geico sought to dismiss the claims in Plaintiff's Recast Complaint for lack of prosecution and for a failure to comply with court orders and rules of procedure. [Doc. 27].

A. **Procedural Background**

Plaintiff filed her initial Complaint [Doc. 1] after receiving a right to sue letter from the Equal Employment Opportunity Commission. *See* [Doc. 1-4]. The Court reviewed her Complaint, found it to be a textbook shotgun pleading, and promptly ordered her to recast it. [Doc. 11, p. 2]. *See Anderson v. Dist. Bd. of Trustees of Cent. Fl.*

---

[1] In her Recast Complaint [Doc. 12], Plaintiff alleges discrimination in violation of Title VII of the Civil Rights Act of 1964 based on race, gender/sex, religion, and national origin.

*Comm. Coll.*, 77 F.3d 364, 368 n.5 (11th Cir 1996). This case derailed early, and despite the Court's lenience, patience and direction, Plaintiff stubbornly continued to operate outside the procedural tracks. Sadly, Plaintiff's case can best be described as a pattern of missed deadlines, disregarded discovery rules, ignored court directives, concealed documents, and attempts to muddy the record with intentionally vague responses to very easy questions.

Let's start with Plaintiff's discovery responses. For starters, Federal Rule of Civil Procedure 26(b) required her to file her initial disclosures by August 30, 2021.[2] However, she didn't file them until December 26, 2021, some 120 days late.[3] While waiting on Plaintiff's initial disclosures, Geico issued its First Interrogatories, [Doc. 22-2, p. 2], and its First Request for Production of Documents to Plaintiff, [Doc. 22-2, p. 15]. Plaintiff, however, ignored these valid discovery requests and submitted nothing of consequence. In response, Geico filed a Motion to Compel [Doc. 23], causing the Court to issue an Order [Doc. 26] requiring Plaintiff to comply with discovery rules. Cognizant of her *pro se* status, the Court took the extra step of reminding Plaintiff of her duty to "fully comply with the Court's discovery orders," and that "failure to do so can result in dismissal of her case." [Doc. 26, p. 4]. The Court's order required Plaintiff to

---

[2] Rule 26 requires initial disclosures be made within 14 days following the Rule 26(f) conference. Fed. R. Civ. P. 26(b). The parties held a Rule 26(f) conference on August 16, 2021. [Doc. 19].

[3] Geico repeatedly communicated with Plaintiff to accommodate her tardy responses and to give extensions before involving the Court. *See* [Doc. 23-4]; [Doc. 23-5]; [Doc. 23-6]; [Doc. 23-7].

produce the documents in question[4] before February 7, 2022. [*Id.* at p. 3]. Plaintiff did not respond to the Court's order until February 11, 2022, when she filed a Motion for Extension of Time [Doc. 29] to comply.

While waiting on Plaintiff's discovery responses, Geico properly noticed her deposition to occur on February 9, 2022. [Doc. 27, p. 5]; [Doc. 27-10]. Plaintiff neither attended the deposition nor informed Geico's counsel that she would not be able to attend. [Doc. 27, p. 5].

Once more, the Court reminded Plaintiff of her duty to "comply with [Geico's] discovery requests and notice of deposition." [Doc. 31]. The Court gave Plaintiff ten days to "fully and completely comply," and warned Plaintiff that if she didn't, she "runs the very real risk of having her case dismissed." [*Id.*]. The Court had no real choice but to extend discovery again. [Doc. 33].

Finally, Plaintiff decided to comply with the Court's orders—at least in form, but certainly not in substance. Plaintiff eventually served her initial disclosures and responses to discovery on Geico's counsel on February 25, 2022,[5] and she "agreed" to attend a deposition on March 7, 2022. [Doc. 38, p. 2]. However, Plaintiff's responses to both were incomplete and convoluted.

---

[4] Geico requested: all documents referenced in Plaintiff's Complaint or initial disclosures, all audio or video recordings, all statements or documents relating to Plaintiff's income and taxes between 2016–2021, all medical records, any and all social media posts, and any documents Plaintiff intends to introduce at trial. [Doc. 23-3].

[5] After the Court, once again, gave Plaintiff an extension. [Doc. 31].

First, in her initial disclosures, Plaintiff named only a single person—Angela Emery—who may have had discoverable information related to her case. [Doc. 27-8, p. 2]. Just one person. No doctors, no accountants, not all of her managers, no co-workers, not the folks who fired her—just a single representative from Geico's human resources department—Angela Emery.

Next, in her responses to Geico's First Interrogatories, Plaintiff was elusive and non-responsive. In one response, she contends that the information Geico sought was "intrusive and privileged personal health information," despite the fact that some of her claims directly involve her mental health.[6] [Doc. 38-1, p. 5]. Even more, Plaintiff contended that Geico's request for notes she made regarding the case was "unattainable and immaterial to information that could be reasonably made available to [it]." [*Id.* at p. 9]. Plaintiff further "objected" to Geico's Requests for Production on the grounds that Geico should use its own records to satisfy its requests, not require her to collect that information. [*Id.*]. Plaintiff refused to answer certain interrogatories because she contended that she had no duty to disclose such information because it "could be used for impeachment purposes in this case." [*Id.* at p. 4]. Generally speaking, that's simply not how discovery works.

---

[6] In fact, Plaintiff seeks "*$1.6 million dollars* for emotion harm [*sic*], stress, mental anguish, and inconvenience" yet she refused to supply information regarding her mental health or medical treatments. [Doc. 12, ¶ 23 (emphasis added)].

4

But that's just the beginning. Plaintiff's deposition proved to be its own adventure. Plaintiff continued to respond to questions with non-answers. As a prime example of not answering the simplest of questions, Plaintiff began her deposition by refusing to provide her current residential address. [Doc. 41, Amaechi Depo., pp. 16:7—17:19]. It didn't get much better. She later admitted to withholding relevant documents and audio recordings, refused to disclose the names of her treating physicians and "didn't know" the names of potentially relevant people with whom she worked. *[Id*. pp. 125:1–8; 151:3–4]. And so it went for 479 pages (which excludes the accompanying 215 pages of exhibits). The Court reviewed every page of Plaintiff's deposition (and the exhibits) and can only describe it as the pinnacle of unpreparedness wrapped into a whirlwind of unanswered questions and admitted noncompliance. The following answers provide some examples of the frustration and obfuscation Plaintiff offered Geico:

> Q: You didn't provide a list of medical providers, right?
>
> A: I did not provide a list of medical providers. I think it's personal protected health information. I don't think it relates to this case or to GEICO.[7]
>
> …
>
> Q: So are you willing to provide me the [medical] information or do we need to go to the Court about it?
>
> A: If you want to go through the Court. I think that's better. That makes

---

[7] [Doc. 41, Amaechi Depo., p. 147:15–20].

me feel safer. I just feel like it's unnecessary prying.[8]

…

Q: Okay. And when you say you were hospitalized for a period of time, do you know what the period of time was that you were hospitalized for?

A: Yes, but I do not want to disclose that at this time.[9]

…

Q: Okay. So I think what you're saying there is that you do have documents and things that are related to the case, but you haven't given them to [Geico] and you haven't compiled them all yet; is that right?

A: That is correct.[10]

…

Q: And I realize you may not have kept everything, but have you looked for anything [notes, etc.] that you might have kept?

A: No.[11]

…

Q: [related to emails not attached to EEOC charge]:

A: I need to search my email and confirm to you that I've looked through my email and I don't see anything else saved in there that you don't already have.

Q: And you haven't done that is what you're saying?

---

[8] [*Id.* at p. 155:4–8].

[9] [*Id.* at p. 155:17–21].

[10] [*Id.* at p. 177:14–19].

[11] [*Id.* at p. 170:14–20].

A: I have not done that. I can do that, but I have not done that.[12]

…

Q: [related to Plaintiff's potential comparator for her discrimination claim based on national origin] Okay. And his national origin?

A: I believe he's American.

Q: Okay. But you don't know for sure?

A: I don't know.[13]

It is important to recall that the Court had twice admonished Plaintiff about her duty to provide full and complete disclosures and discovery responses, comply with the procedural rules, and cooperate in her deposition, warning her that continued flouting of the rules would result in the dismissal of her case. [Doc. 21]; [Doc. 26]. The Court patiently held onto the faith that Plaintiff would cooperate and be ready and willing to prosecute her case according to well-established guidelines applicable to every litigant that comes into federal court. However, the Court must admit its faith was misplaced. Notwithstanding the clear rules and Plaintiff's demonstrated ability to learn those rules, Plaintiff continued to divert and hide documents until it came time for her to respond to Geico's summary-judgment motion. Suddenly, Plaintiff mysteriously produced at least 20 separate documents that were undeniably responsive to Geico's earlier Requests for

---

[12] [*Id.* at pp. 223:20—224:2].

[13] [*Id.* at p. 296:1–4].

Production. The Court can only find such deception to be intentional and specifically designed to sandbag Geico.

To illustrate, Geico's Request for Production No. 4 asked for all "emails, texts, diaries, notes, [. . .] recordings, transcripts, and other documents" in Plaintiff's possession that are related to the case. [Doc. 23-3, p. 6]. Plaintiff responded that she did not "have every note she ever made for herself[.]" [Doc. 38-2, p. 4]. But, when it came time to respond to Geico's Motion for Summary Judgment [Doc. 39], Plaintiff came up with at least two memos she had previously written about different situations pertinent to her case. *See* [Doc. 49-6]; [Doc. 49-5]. When Geico requested tax returns or other income documents, Plaintiff responded with objections and contentions that Geico should have that information already. [Doc. 38-2, p. 4]. While it is likely that Geico may have her income documents during her period of employment with Geico, the same can't really be said for her personal tax returns. Notwithstanding such meritless objections, Plaintiff produced her tax returns for the first time in her Response [Doc. 49] to Geico's summary-judgment motion. *See e.g.*, [Doc. 49-21]. Plaintiff refused some requests because she had not "compiled all documents and things that [she] could present or seek to introduce at trial[.]" [Doc. 38-2, p. 6]. In all, Plaintiff "objected" to every one of Geico's Requests for Production, and she didn't timely provide a single document or piece of evidence as requested before it came time for the Court to rule on

the merits of her case.[14] *See generally* [Doc. 38-2].

When it came to her Response to Geico's summary-judgment motion, Plaintiff once again violated numerous local rules. Namely, she offered a 69-page response to the motion. The local rules clearly and unequivocally limit that response to 20 pages. LR 7.4, MDGa. Only after the Clerk of Court notified Plaintiff of her deficient filing, did she make strides to comply with Local Rule 7.4 and request leave to file excess pages. [Doc. 51]. The Court denied her request, and it required Plaintiff to submit her 20-page response by 5 p.m. on June 9, 2022. [Doc. 52]. Plaintiff ignored that instruction too. Rather than meet the Court's deadline, she submitted her Response five days late on June 14, 2022. [Doc. 54].

In her Response, Plaintiff did not follow Local Rule 56, which requires the non-moving party to respond to each of the movant's numbered material facts. LR 56, MDGa. On the contrary, Plaintiff just conclusorily claimed that the facts are "garnished with inadequate, untrue, misleading, and false information." [Doc. 54, p. 19]. Additionally, Plaintiff complains that the 20-page limitation prevents her from fully explaining her objections to Geico's facts, and she asked the Court to look to her prior filing—the one that violated the Court's Local Rules. [*Id.*].

---

[14] Plaintiff did provide 8 documents to Geico at her deposition. However, those documents were still not completely responsive to any request for production. [Doc. 41-1, pp. 22–29].

9

Bottom line, district courts should neither have to beg a party to properly participate in *her own* case nor blindly tolerate a party who chooses to conduct itself otherwise. That said, let's turn to Geico's reasoning as to why it argues Plaintiff's claims should be dismissed.

B.      **Motion to Dismiss**

Geico asks the Court to dismiss Plaintiff's action for a lack of prosecution after a troubling discovery period that required the Court's intervention. [Doc. 27]. The Federal Rules of Civil Procedure give courts wide discretion in dismissing actions where the "plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Indeed, the "power of a court to dismiss a claim is inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions." *Zocaras v. Castro*, 465 F.3d 479, 490 (11th Cir. 2006) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 526, 630–31 (1962)). This type of broad discretion is warranted to ensure that a court is empowered to "manage its docket with a view toward the efficient and expedient resolution of cases[.]" *Dietz v. Bouldin*, 579 U.S. 40, 41 (2016) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

Dismissal under Rule 41(b) is appropriate where there is a "clear record of 'willful' contempt and [a finding] that lesser sanctions would not suffice." *Gratton v. Great Am. Comms.*, 178 F.3d 1373, 1374 (11th Cir. 1999) (citing *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)). Willful contempt is more than mere delay; rather, it is

willful delay that prolongs the case. *Jacobs v. Clayton Cnty. Solic. Gen. Off.*, 685 F. App'x 824, 826–27 (11th Cir. 2017). Additionally, "dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is [within the court's discretion]." *Id.* (quoting *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)).

Even more, discovery violations—especially where a court has extended deadlines and mediated with the parties—are grounds for dismissal under Rule 41(b). *See Lyle v. BASF Chemistry, Inc.*, 802 F. App'x 479 (11th Cir. 2020); *Jenkins v. Sec. Eng'rs, Inc.*, 798 F. App'x 362 (11th Cir. 2019).

Plaintiff's status as a *pro se* litigant doesn't grant her a license to ignore the court's rules and orders nor does it shield her from the consequences of her failure to comply. The Eleventh Circuit has consistently held that even *pro se* litigants must "conform to procedural rules," just like parties with counsel. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). And, since a *pro se* litigant has necessarily chosen to act as her own lawyer, she "is and should be subject to sanctions like any other litigant." *Moon*, 863 F.2d at 837. Eleventh Circuit precedent is clear: if a *pro se* litigant does not follow the commands of court orders and rules of procedure, dismissal is appropriate. *See McIntosh v. Gauthier*, 182 F. App'x 884 (11th Cir. 2006); *Birdette v. Saxon Mortg.*, 502 F. App'x 839 (11th Cir. 2012); *Brutus v. IRS*, 393 F. App'x 682 (11th Cir. 2010); *Novero v. Duke Energy*, 753 F. App'x 759 (11th Cir. 2018).

Most notably, the Court looks to the case of *Heath v. Terrell County School District*,

815 F. App'x 316 (11th Cir. 2020)—a case remarkably similar to this one. There, the *pro se* plaintiff failed to adequately respond to discovery requests, did not turn over certain records, and did not comply with court orders to participate in discovery. *Heath*, 815 F. App'x at 317. In *Heath*, much like this case, the court warned that plaintiff numerous times that her continued disregard for rules and orders would result in dismissal. Remaining defiant, the *Heath* plaintiff did not heed the district court's warnings, and it kept its word and dismissed her case. *Id.* Upon review, the Eleventh Circuit affirmed the district court's dismissal because the plaintiff did not "attempt to obtain evidence to prove her case," she "repeatedly failed to produce [correct evidence]," and seemingly ignored numerous court orders. *Id.* at 319–20. Those same transgressions presented in *Heath* plague this plaintiff's case, too.

In all, Plaintiff, in this case, has been warned—at least three times—that failure to prosecute her case and comply with the Court's orders will result in dismissal. [Doc. 21]; [Doc. 26]; [Doc. 31]. Like *Heath*, the time has come for this Court to keep its word. The record shows a clear disregard for not only the Court's orders but for the Federal Rules of Civil Procedure as well. Plaintiff has been "repeatedly and stubbornly defiant," both to the Court and to the fairness that underlies the well-established procedures for litigation. *Moon*, 863 F.2d at 837. The Court has ordered compliance, set conferences, and given extensions. Taking everything that has occurred over the course of litigation in this case, the Court is left with the firm and clear conviction that no other sanction

12

will suffice. After all, the Court has patiently and consistently tried to get Plaintiff to properly participate in her own case—something no court should have to do. The Court even delayed ruling on this motion while waiting for Geico's imminent summary-judgment motion, hoping that the Court's previous admonitions would resonate with Plaintiff and that she would finally follow the Court's rules. Rather than act accordingly, she repaid the Court's patience by producing the very documents Geico had long-since requested, something that the Court easily finds could only be intentional. Plaintiff has apparently decided to prosecute her case on her terms in accordance with her rules in a manner she alone prescribes for herself.

The Court is confident that if it were to continue to afford Plaintiff additional lenience, the problems that have persisted throughout this case will not somehow magically disappear. Instead, Plaintiff's continued disregard for rules and procedure will inevitably snowball into an uncontrollable array of missing evidence, delayed filings, and problematic communications—with each and every one weakening the fairness of litigation that is supposed to propel cases forward. That is not how the legal system works. The rules and procedures of litigation seek to provide the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Dismissal is indeed a "sanction of last resort, applicable only in extreme circumstances." *Zocaras*, 465 F.3d at 483. This case is among those extreme circumstances where dismissal is not only warranted, but mandated and appropriate.

**C.     Conclusion**

Based upon the foregoing, the Court exercises its considerable discretion and **GRANTS** Defendant Geico's Motion to Dismiss [Doc. 27], and it **DISMISSES** Plaintiff's Recast Complaint [Doc. 12]. The Clerk of Court is **DIRECTED** to ENTER Judgment accordingly **CLOSE** this case.

**SO ORDERED**, this 12th day of September, 2022.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**